Case 1:11-cv-00741-RRB   Document 13   Filed 02/07/14   Page 1 of 16

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL EUGENE HOLLIS,<br><br>    Plaintiff,<br><br>vs.<br><br>FNU BLATHERS, *et al.*<br><br>    Defendants. | Case No. 1:11-cv-00741-RRB<br><br>**<u>DISMISSAL ORDER</u>** |

Michael Eugene Hollis, a federal prisoner appearing *pro se* and proceeding *in forma pauperis*, brings this civil rights action under 42 U.S.C. § 1983 against various individuals employed by the Fresno County Sheriff's Department.[1] Hollis's complaint arises out of his pretrial detention at the Fresno County Jail in accordance with a Detention Order pending criminal proceedings in this district.[2]

---

[1] In addition to FNU Blathers, Hollis names FNU Cartier, FNU Cunha, and FNU Osborne in the caption. Although not included in the caption, Hollis also identifies as a defendant in the body and seeks relief from FNU Nichols. In addition, although neither named in the caption nor identified as a person against whom relief is sought, Hollis also refers in the body of his complaint to Sheriff Mims as well as Classification Defendants Oliver and Shumate, as a "defendant."

[2] *United States v. Hollis*, Case No. 1:08-cr-00276-OWW. The Court takes judicial notice of the record in those proceedings. Fed. R. Evid. 201. The record in that case also indicates that Hollis was represented therein by appointed counsel.

DISMISSAL ORDER
*Hollis v. Blathers*, 111-cv-00741-RRB – 1

DISMISSAL ORDER
*Hollis v. Blathers*, 111-cv-00741-RRB – 1

I.     SCREENING REQUIREMENT

This Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[3] This Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief."[4] Likewise, a prisoner must exhaust all administrative remedies as may be available,[5] irrespective of whether those administrative remedies provide for monetary relief.[6]

In determining whether a complaint states a claim, the Court looks to the pleading standard under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[7] "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[8] Failure to state a claim under § 1915A incorporates the familiar standard

---

[3]    28 U.S.C. § 1915A(a).

[4]    28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c); *see Lopez v. Smith*, 203 F.3d 1122, 1126 & n.7 (9th Cir. 2000) (en banc).

[5]    42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006) ("proper exhaustion" under § 1997e(a) is mandatory and requires proper adherence to administrative procedural rules); *Booth v. Churner*, 532 U.S. 731, 741 (2001) (exhaustion of administrative remedies must be completed before filing suit).

[6]    *See Booth*, 532 U.S. at 734.

[7]    Fed. R. Civ. P. 8(a)(2).

[8]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*
(continued...)

applied in Federal Rule of Civil Procedure 12(b)(6), including the rule that complaints filed by *pro se* prisoners are to be liberally construed, affording the prisoner the benefit of any doubt, and dismissal should be granted only where it appears beyond doubt that the plaintiff can plead no facts in support of his claim that would entitle him or her to relief.[9]

This requires the presentation of factual allegations sufficient to state a plausible claim for relief.[10] "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"[11] Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.[12] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[13]

This Court notes at the outset that Hollis failed to heed the instructions on the form provided for filing a civil rights complaint. Most specifically, in Part IV of the form complaint where it states:

---

[8](...continued)
*Twombly*, 550 U.S. 554, 555 (2007)).

[9]   *Wilhelm v. Rotham*, 680 F.3d 1113, 1121 (9th Cir. 2012).

[10]   *Iqbal*, 556 U.S. at 678–69; *see Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting and applying *Iqbal* and *Twombly*).

[11]   *Iqbal* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

[12]   *Id.*

[13]   *Id.* (quoting *Twombly*, 550 U.S. at 555).

> (State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)[14]

Hollis's complaint is replete with legal arguments, case citations, including excerpts or quotation from cases, and conclusory statements, interspersed with factual allegations. This disregard of the instructions places an added burden on the Court to separate the wheat from the chaff to determine whether or not Hollis has pleaded sufficient *facts* to warrant granting him the relief requested, or any relief at all.

## III.   STATE PROCEEDINGS

### A.   Administrative

Attached to the Complaint are three Inmate Grievance Forms that Hollis contends were not properly processed, and one Inmate Grievance Form that was resolved. Also attached are three letters to the Internal Affairs Division of the Fresno County Sheriff's Office, and a letter allegedly addressed to the U.S. Marshal's Service, with a copy to Fresno County Sheriff Mims. For the purposes of initial screening, this Court assumes, but does not decide, that to the extent Hollis sought or attempted to seek redress for his grievances Hollis' has either properly exhausted or been prevented from exhausting, his available administrative remedies. Hollis's administrative grievances are summarized in chronological order as follows:

January 13, 2009 – Grievance 1: While in what he describes as "24/7 medical punitive lockdown," Hollis complains that his requests were being intercepted and

---

[14]   Docket 1 at 5.

grievances denied by unknown correctional officers for the period beginning January 7, 2009. This grievance was rejected by Defendant Cunha.[15]

January 24, 2009 – Grievance 2: In this grievance Hollis complained about denial of access to a coffee pot on a 24/7 basis and denial of hot water for coffee. This grievance was rejected by FNU Cartier.[16]

January 24, 2009 – First Letter to Internal Affairs: In this letter Hollis raised several complaints, including: (1) lack of hot water; (2) the quality of the food; (3) alleged confiscations of unidentified grievances by various correctional officers; (4) refusal to permit contact with supervisory officers; and (5) generalized observations of what Hollis contended constituted abusive behavior directed at other inmates by correctional officers. Hollis lists six specific grievances by topic: (1) denial of sanitizer for hair clippers; (2) denial of promised back surgery; (3) an underwear issue; (4) backed-up drain in shower; (5) mail room legal mail issue; and (6) harassment/denial of grievance process.[17] It does not appear that Hollis received a response to this correspondence.

February 7, 2009 – Grievance 3: In this grievance Hollis complained that, beginning February 2, 2009, he was housed with a person that had been declared criminally insane/incompetent. Hollis contended because of the actions and conduct of the other

---

[15]   Exhibit 4 [Docket 1 at 38].

[16]   Exhibit 6 [Docket 1 at 43].

[17]   Exhibit 3 [Docket 1 at 39–42].

inmate Hollis believed himself to be in danger and feared for his safety.  Hollis further contends that Cunha refused to process this grievance.[18]

February 17, 2009 – Second Letter to Internal Affairs:  In this letter Hollis complains again about the refusal of correctional officers to process grievances, turning off the hot water to the shower, what Hollis referred to as a "very nasty shakedown" of his cell, and intimidating physical and mental harassment.[19]

February 25, 2009 – Letter to U.S. Marshal's Office:  In this letter Hollis refers to an informal, internal disciplinary matter involving a toothpick made out of a pencil and a staple for which was given a five-day disciplinary sentence.  Hollis contends that instead of five days, he was placed in disciplinary housing for a period of 30 days.  In addition to the fact that an additional twenty-five days were added to the sentence, Hollis refers to the disciplinary housing as an "extremely cold MEATLOCKER."  Hollis further describes himself as old, suffering from arthritis for which he takes medication three times a day, and as a "medically unfit candidate for this FREEZEBOX."[20]  It does not appear that Hollis received a response to this correspondence.

March 17, 2009 – Third Letter to Internal Affairs:  This complaint, which also refers to the incarceration in the "freeze box," contends that Sgt. Blathers manipulated the system in two ways: (1) to have Hollis confined in the "freezebox" instead of the lockdown cell in which he was housed; and (2) for thirty instead of five days.  Hollis also contended that

---

[18]   Exhibit 2 [Docket 1 at 36].

[19]   Exhibit 7 [Docket 1 at 44].

[20]   Exhibit 8 [Docket 1 at 45–46] (all uppercase in the orginal).

while he was confined to the "freezebox," Blathers visited him for the purpose further harassing him.[21] Again, there is no indication that Hollis received a response to his complaint.

### B.  State Criminal Action

As relevant to the present case, the record in the criminal proceedings shows that during the course of those proceedings Hollis sought judicial intervention concerning the conditions of his confinement in the Fresno County Jail.

<u>December 22, 2008</u>:  Hollis attempted to file a petition for habeas relief challenging the conditions of his confinement, which was returned by order of the court on January 5, 2009, with the notation that his allegations had to be brought in a civil action.[22]

<u>January 11, 2009</u>:  Hollis moved for court ordered access to legal resources and supplies.[23]

<u>February 8, 2009</u>:  Hollis moved for injunctive relief regarding the housing with the psychotic inmate.[24]

<u>March 25, 2009</u>:  Hollis moved for injunctive relief based upon an alleged bad knee aggravated by the fact that Hollis was "temporarily" forced to sleep on a mattress placed on a concrete floor.[25]

---

[21]  Exhibit 9 [Docket 1 at 47].

[22]  Case No. 1:08-cr-00276-OWW, Docket 17.

[23]  Case No. 1:08-cr-00276-OWW, Docket 18.

[24]  Case No. 1:08-cr-00276-OWW, Docket 21.

[25]  Case No. 1:08-cr-00276-OWW, Docket 22.

April 1, 2009: The motions at Dockets 18, 21, and 22 were denied, again informing Hollis that he must raise challenges to the conditions of his confinement in a civil rights action, and advising him of the requirement to exhaust his administrative remedies provided by the Fresno County Jail prior to initiating the action.[26]

### III.   GRAVAMEN OF COMPLAINT

The Complaint consists of 28 hand-written pages of allegations, to which Hollis attached 10 exhibits consisting of 16 pages. Hollis pleads essentially two causes of action: (1) correctional officer harassment and retaliation resulting in denial of access to the courts; and (2) retaliatory abuse of the disciplinary process. Hollis also contends that he is a disabled.[27]

#### A.   Harassment/Retaliation

Hollis focuses on the handling of his grievances, asserting that he was hampered and delayed in obtaining the necessary forms to submit his grievances, or that lower level correctional officers prevented grievances from being properly processed and appropriate relief granted. Hollis also complains about being forced to share a cell with an individual who had been adjudged criminally insane, placing Hollis in fear for his life.[28]

---

[26]   Case No. 1:08-cr-00276-OWW, Docket 23.

[27]   For the purpose of screening the Court accepts Hollis' allegations concerning his physical ailments. The Court also notes, however, that as "proof" of his disability Hollis attached a Form SSA-1099 – Social Security Benefit Statement for the tax year 2008. Exhibit 1 [Docket 1 at 35]. Because this SSA-1099 indicates a deduction for Medicare Part B premiums, the form more likely than not refers to old-age, not disability, benefits. In any event, standing alone, it is insufficient to establish that Hollis is entitled to the protection of Americans with Disabilities Act.

[28]   Hollis also acknowledges that he was able to obtain relief from this situation.
(continued...)

Although not entirely clear from the complaint, it also appears that Hollis may be claiming damages to or for loss of his personal property as a result of an alleged "trashing" of his cell by Osborne and Cunha, either on Cartier's orders or Cartier's explicit refusal to be present during the alleged trashing.  Finally, Hollis argues that Osborne and Cunha engaged in a continuous course of  "mad-dogging" by their looks or verbal remarks.

### B.     Retaliation/Abuse of Disciplinary Process

Hollis directs this claim against Sgt. Blathers and Cpl. Nichols.  This claim arises out of Hollis's placement in disciplinary housing as a result of a minor infraction, i.e., the possession of a toothpick fashioned out of a pencil and a staple.  As against Cpl. Nichols, Hollis contends that he was not provided a paper copy of the findings and punishment imposed in violation of his due process rights.  As against Sgt. Blathers, Hollis contends that she "conspired" with Cartier, Osborne and Cunha to somehow manipulate the system so that Hollis was moved from the fifth floor of the jail to the "the VERY COLD Sixth Floor" for a period of thirty days, not five, in retaliation for his complaints against them.  Hollis contends that he has an arthritic condition the renders him medically unfit for housing in the extremely cold temperature that prevailed on the sixth floor of the jail, thereby subjecting him to cruel and unusual punishment.

---

[28](...continued)
Consequently, there does not appear to be any further relief this Court may grant because although Hollis asserts that he feared for his life during the period he was so housed, Hollis does not assert an cognizable physical injury.  42 U.S.C. § 1997e(e).

DISMISSAL ORDER
*Hollis v. Blathers*, 111-cv-00741-RRB – 9

## IV. DISCUSSION

### A. Access to the Court

The Court starts with the proposition that the right of access to the courts is a well established fundamental constitutional right.[29] It is, however, also well established that there must be some injury and that requirement is not satisfied by just any type of frustrated legal claim.[30] Access to the courts in the Constitutional context is the opportunity to prepare, serve, and file such pleadings and documents necessary or appropriate to commence or prosecute court proceedings affecting one's personal liberty.[31] Access to court claims are of two types—a forward-looking claim, *i.e.*, one in which the action seeks to remove impediments or road blocks to future litigation, and a backward-looking claim, *i.e.*, one in which specific litigation ended poorly, or could not have commenced, or could have produced a result subsequently unobtainable.[32]

In this case, a backward-looking claim, although it is obvious that the actions by one or more of the defendants may have resulted in a delay in Hollis's access to this Court in asserting his civil rights complaints in his criminal proceeding, he did not suffer any adverse consequence as a result of that delay. That is, the result—that he had to bring his action in a civil suit, which he has two years later—would not have changed if there had been no impediment.

---

[29] *Bounds v. Smith*, 430 U.S. 817, 821, 828 (1977).

[30] *Lewis v. Casey*, 518 U.S. 343, 354 (1996).

[31] *Id*. at 384 (Thomas, J. concurring); *Philips v. Hust*, 477 F.3d 1070, 1075–76 (9th Cir. 2007); *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1159–60 (9th Cir. 2003).

[32] See *Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002).

**B.   Supervisor Liability.**

To the extent that Hollis attempts to state a claim against Sheriff Mims it is based upon allegations that Mims has either: (1) failed to adequately train and supervise his subordinates; or (2) failed to institute an adequate grievance processing procedure. With respect to Hollis's claims against FNU Blathers, Hollis alleges that she failed to adequately supervise and correct her staff, and ignored Hollis's attempts to discuss with her the unconstitutional misconduct of her staff.

Section 1983 suits do not support vicarious liability, a plaintiff must demonstrate that each defendant personally participated in the deprivation of his or her rights.[33] To impose liability on a supervisor, the supervisor's wrongful conduct must be sufficiently causally connected to the constitutional violation.[34] That is, the official must "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."[35]

> A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains]."

---

[33]   *Iqbal*, 556 U.S. at 677; *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002); *see Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, 691–95 (1978) (rejecting the concept of *respondeat superior* in the context of § 1983, instead requiring individual liability for the violation); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under [§] 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." (Citations omitted)).

[34]   *See Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (*abrogated in part on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994)).

[35]   *Id.* (internal quotation marks and citations omitted).

*Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir.1978) (*Johnson*) (emphasis added). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. [Citations omitted.][36]

Hollis' allegations against both Sheriff Mims and FNU Blathers, to the extent they are based upon supervisory liability, fall far short of satisfying this standard.

### C.     Housing Conditions

It is clearly established that prison officials have a duty under the Eighth Amendment to provide inmates with the necessities of life, including adequate shelter, food, clothing, sanitation, medical care, and personal safety.[37] Prison condition claims have both an objective and subjective element. The objective element is based on the severity of the deprivation and the subjective on the prison official's knowledge of the risk of serious injury or pain being inflicted by consciously ignoring the prisoner's needs.[38] The circumstances, nature, and duration of a deprivation of a necessity must be considered in determining whether a constitutional violation has occurred.[39] Although "the Constitution does not

---

[36]     *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (quoted with approval in *Tennison v. City and County of San Francisco.*, 570 F.3d 1078, 1096 (9th Cir. 2009)).

[37]     *See Farmer,* 511 U.S. at 832; *Keenan v. Hall,* 83 F.3d 1083, 1089 (9th Cir. 1996); *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982) *abrogated on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995); *Wright v. Rushen,* 642 F.2d 1129, 1132–1133 (9th Cir. 1981).

[38]     *See, e.g., Collins v. State*, 2006 WL 1587467, Slip Op. *2 (W.D. Va. June 6, 2006); *Lavender v. Lampert*, 242 F.Supp.2d 821, 845–846 (D. Or. 2002); *ASHANN-RA v. Commonwealth of Virginia*, 112 F.Supp.2d 559, 562–63 (W.D. Va. 2000).

[39]     *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000), citing *Hoptowit,* 682 F.2d at 1259 ("[t]he more basic the need, the shorter the time it may be withheld").

mandate comfortable prisons,"[40] it is clearly established that housing a prisoner in conditions involving ambient extreme heat that aggravates a pre-existing medical condition may constitute a violation of the Eighth Amendment proscription against cruel and unusual punishment.[41] This Court can find no principled reason not to apply the same rule to the extreme cold alleged in this case.

As presently constituted, however, Hollis's Complaint does not properly allege an Eighth Amendment violation. In amending the Complaint, Hollis is reminded that he must plead facts, unembellished with subjective descriptive adjectives. Hollis is also reminded that he must establish that he exhausted his available administrative remedies with respect to this issue, or that he was prevented therefrom by circumstances beyond his control.

**D.    Due Process Violation**

Although he does not contest either the findings of the hearing officer or the punishment imposed, Hollis contends that failing to provide him with a paper copy of findings and punishment at the conclusion of the disciplinary hearing constituted a denial of due process. Hollis is correct that due process requires a written statement by the factfinder as to the evidence relied on and the reason for the disciplinary sanction imposed.[42] In this case, however, because Hollis admits to the infraction involved and does not challenge the five-day sanction imposed by the hearing officer, there does not

---

[40]    *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).

[41]    *Graves v. Arpaio*, 623 F.3d 1043, 1047–48 (9th Cir. 2011) (extreme heat); *see Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (prolonged exposure to the heat of the sun); *see also Pitre v. Cain*, 131 S.Ct. 8 (Sotomayer, J, dissenting from denial of *certiorari*).

[42]    *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).

appear to be any effective relief this Court may grant.[43]  Accordingly, Hollis's due process claim against Nichols must be dismissed.

### E. Conspiracy

To establish a conspiracy under § 1983 Hollis must establish: "(1) the existence of an express or implied agreement among defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights."[44]

> A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage.  To prove a civil conspiracy, the plaintiff must show that the conspiring parties reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement.  To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.  A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions.[45]

Hollis's bare conclusory allegation of a conspiracy unsupported by material facts is insufficient.[43]  Indeed, it may be fairly stated that for the most part Hollis is relying on conjecture and speculation.  Furthermore, except for his Eighth Amendment cruel and unusual punishment claim arising out being housed on the sixth floor, even if Hollis

---

[43]    *See Virginia Ry. Co. v. System Fed'n No. 40*, 300 U.S. 515, 550 (1937) ("[A] court . . . may refuse to give relief when it is apparent that that which it can give will not be effective or of benefit to the plaintiff.").

[44]    *Avalos v. Baca*, 586 F.3d 583, 592 (9th Cir. 2010) (internal quotation marks and citations omitted).

[45]    *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc) (internal quotation marks and citations omitted).

[43]    *See Woodrum v. Woodward County, Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989).

provides sufficient evidence of an agreement, he has failed to establish an unlawful objective.

## V. CONCLUSION and ORDER

Other than, perhaps, an Eighth Amendment violation for housing him under conditions of extreme cold for a prolonged period of time, Hollis has failed to plead a plausible cause of action under § 1983. Hollis must also bear in mind that, in addition to the other requirements necessary to establish this claim he must name the person(s) who had the both the authority to determine where he was to be housed and exercised that authority to transfer him from the fifth to the sixth floor. Although it may be questionable that Hollis can truthfully allege a viable cause of action under the Eighth Amendment, this Court cannot at this stage unequivocally say that Hollis cannot. Furthermore, as to his Eighth Amendment claim, it is questionable whether Hollis exhausted his available administrative remedies; but, as noted above, this Court does not reach that issue at this stage of the proceedings. Accordingly, the Complaint will be dismissed with leave to amend.[44]

*In preparing his amended complaint, Hollis is reminded that he must limit the allegations in his complaint to the facts of his case; i.e., the act that infringed upon a constitutionally protected right or rights, who did the act, when the act occurred, and how he was injured as a result of the act. Hollis may not make legal arguments,*

---

[44] *See Hartman v. California Dept. of Corr. and Rehab.*, 707 F.3d 1141, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile.").

*or cite any cases or statutes. A failure to comply with this requirement may result in the pleading being stricken in whole or in part*.

**IT IS THEREFORE ORDERED** that the Complaint on file here is hereby **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that on before **March 21, 2014**, Hollis may file an Amended Complaint consistent with this Order.

**IT IS SO ORDERED** this 7th day of February, 2014.

S/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE